CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. CHARLES L. BUEL ET AL.

FILED APRIL 18, 1906. No. 14,291.

Watercourses: OBSTRUCTION: LIABILITY. In the absence of negligence in the construction of its roadbed across a natural watercourse, a railroad company is not liable for damages done to property on adjacent lands by reason of a flood so unprecedented that it amounts in law to an act of God.

ERROR to the district court for Lancaster county: ALBERT
J. CORNISH, JUDGE.    Reversed.

M. A. Lowe, W. F. Evans, Billingsley & Greene and R.
H. Hagelin, for plaintiff in error.

Charles O. Whedon, contra.

EPPERSON, C.

Defendants in error, who were the plaintiffs in the
lower court, brought this action for the recovery of al-
leged damages to their crops and other property caused
by the diverting of the water of Salt creek, a natural
watercourse.   In 1893 the railroad company constructed
the railroad running in a northerly and southerly direction
through the east half of section 32, township 8, range
6, in Lancaster county, Nebraska, upon which land were
two forks of Salt creek, about 80 rods apart, over each
of which the railroad was constructed.   In the first in-
stance the railroad, which is about 25 feet above the
surface of the surrounding land, crossed each branch of
the creek upon trestle work, leaving ample space for the
flow of the creek.   In 1898 the railroad filled the channel
of the north branch of the creek with dirt, constructing
an embankment of earth under its track in the place of
the trestle work, leaving space sufficient only for the
Missouri Pacific Railroad, which runs under the defend-
ant's railway near the original north branch of the creek.
At the same time defendants constructed an artificial
drain, diverting the waters of the north branch of the
creek south, along the west line of the defendant's rail-
road, to the south branch of the creek, and filled in with
dirt a part of the space formerly occupied by trestle work
where the railroad crossed the south branch of the creek,
leaving a space of about 90 feet for the escape of the waters
of both branches.   In July, 1902, there was a heavy rain-
fall, increasing the waters of the creek to such an extent
that the crops and other property of the plaintiffs west

of the defendant's railroad in said section 32 were damaged. A trial was had, resulting in a verdict and judgment in favor of the plaintiffs, for the reversal of which the defendant prosecutes proceedings in error.

Upon the trial, evidence was introduced showing that the heavy rainfall which occasioned the damage was unprecedented, and so unusual that it could not have been reasonably contemplated at the time of the construction of the embankment complained of. Defendant, among other things, alleged that the damages sustained by the plaintiffs were caused by the act of God, and that the embankments were necessarily constructed and improved by the defendant, and with the greatest care, skill and foresight. The court instructed the jury: "It is contended by the defendant that the rainfall at the time of the flood complained of was of so unusual and unprecedented a nature as to amount to an act of God. In this connection you are instructed that, if you find from the evidence that, at the time complained of, there occurred a rainfall so unprecedented in amount and duration in that vicinity, and of such a nature as not to be within reasonable expectation, and if you further find that the defendant's action in no way contributed to the overflow, then, in such case, this would amount to a defense and the plaintiffs could not recover. On the other hand, even though you should find that the rainfall, at the time, was so unprecedented in its nature and duration as not to be reasonably expected, so that it would amount to an act of God, yet, if you should also find that any damages which the plaintiffs suffered were also in part caused by the acts of the defendant in obstructing the flow of the water, then, in such case, this would not amount to a defense."

It is a general rule that the owner of land, through which there is a running stream, may improve his property, with due regard, however, to the rights of his neighbor, and that he is liable to the adjoining landowner only for damages resulting by the diversion of the ordinary waters, or such flood waters as might reasonably be an-

ticipated; and, having constructed such improvements without carelessness, he is not liable for any damages which might be occasioned by extraordinary floods, such as could not reasonably have been contemplated. In other words, the owner of such improvements would not be liable for damages resulting by an act of God, even though necessary improvements made by him were partly responsible for the damage. It follows that, if the defendant in the case at bar constructed the embankment complained of, and the changes made thereby were sufficient to permit the ordinary flow of Salt creek and such flood waters as usually occur, without damage to the plaintiff's property, and the construction and improvement of such embankment were made without carelessness, the defendant would not be liable to the plaintiffs for damages caused by an unprecedented flood, or such as the defendant could not have reasonably contemplated at the time of making the changes, even though the embankment thus erected contributed to the damage complained of. 1 Thompson, Negligence (2d. ed.), sec 72. In *Pittsburg, Ft. W. & C. R. Co. v. Gilleland*, 56 Pa. St. 445, it is said:

"There is no liability on a railroad company for not constructing a culvert so as to pass *extraordinary* floods."

In *Omaha & R. V. R. Co. v. Brown*, 14 Neb. 173, COBB, J., speaking for this court said:

"It was the duty of the railway company, in planning and constructing its bridge, to bring to their execution the engineering knowledge and skill ordinarily practiced in such works, and to see the practical application of such knowledge and skill to the work in hand, among other things, so as to allow of the passage of water and ice, such as is known to pass in the stream annually, or which may reasonably be expected to occur occasionally, without regard to such great or sudden overflows as are often designated as acts of God." This court adhered to that rule in *Omaha & R. V. R. Co. v. Brown*, 16 Neb. 166, and cited it with approval in *McCleneghan v. Omaha & R. V. R. Co.*, 25 Neb. 530.

In reaching this conclusion, we are mindful of the law which holds one liable who, by his negligence, contributes to the act of God in damaging the property of another. But, according to the rule above cited, a railroad company is not guilty of carelessness, if in the construction of its roadbed it sufficiently provides for the passage of such flood waters only as might reasonably be contemplated at the time of such construction. The law requires no more. The objectionable instruction is not a correct proposition of law, because it permitted the jury to assess to the defendant damages inflicted by the elements, if they found that the defendant's lawful acts contributed thereto. The defendant was not liable, unless by its carelessness it aided in bringing about the damage.

Many errors are assigned and argued by the plaintiff in error, which we do not consider necessary to review at this time. The error in the giving of the above instruction was prejudicial, and we recommend that the judgment of the lower court be reversed, and the cause remanded for a new trial.

AMES and OLDHAM, CC., concur.

By the Court: For the reasons appearing in the above opinion, the judgment of the lower court is reversed and the cause remanded for a new trial.

REVERSED.