**CARTER OIL CO. v. WELKER et al.**
**(two cases).**
**Nos. 6856, 6861.**

Circuit Court of Appeals, Seventh Circuit.

Nov. 6, 1939.

Rehearing Denied June 19, 1940.

Harold F. Lindley, of Danville, Ill., Walter Davison, of Mattoon, Ill., and Henry I. Green, of Urbana, Ill., for appellant Carter Oil Co.

Paul J. Wimsey, of Chicago, Ill., Everett L. Dalbey and Ray M. Foreman, both of Danville, Ill., Will P. Welker, of Vandalia, Ill., and William M. Acton, of Danville, Ill., for appellees.

Before SPARKS, TREANOR, and KERNER, Circuit Judges.

SPARKS, Circuit Judge.

The Carter Oil Company appeals from a decree dismissing for want of equity its suit to enjoin appellees from drilling for oil and gas on certain premises claimed by appellant by virtue of a lease to itself. Appellees counterclaimed with a prayer that the lease upon which appellant based its claim be amended to exclude the premises in dispute, and that appellees' title to those premises be quieted and confirmed in themselves.

This appeal presents the question of the construction of a deed executed in 1912 which appellant contends merely conveyed an easement in the strip of land involved, leaving the fee simple interest in the grantor from whose successors in title it obtained the lease upon which this action is predicated.

The deed in question, executed on a printed form captioned a "Right of Way Deed," provided as follows (italicized portions represent those parts which were written in longhand with pen and ink):

"This Indenture Witnesseth, That Illinoi W. Hess * * * in consideration of the benefits accruing to *her* by reason of the construction and operation of a railroad upon said land, and of the sum of *Two Hundred Fifty--50/100* Dollar, * * * *doe*s hereby convey and warrant to Eastern Illinois and Peoria Railroad Company, a corporation organized and existing under the laws of the State of Illinois, as and for its right of way, a strip of land *One Hundred (100)* feet wide, being *Fifty (50)* feet wide on *each side* of a line that has been surveyed and located across and upon the following described real estate, to wit: *Over and across the North-East 1/4 of the North-West 1/4 of Section Eighteen (18) Township Seven (7) North Range Three*

*(3) East of the 3rd P. M. Containing in all Three and Thirty-Four Hundredths acres more or less.*

\* \* \* \* \* \* \* \* \* \* \* \* \* \*"

The strip conveyed was part of a 160-acre tract then belonging to Mrs. Hess, the grantor. At the time of the execution of the deed there had been a survey, and the strip involved had been marked off by stakes extending across the farm. However, at the time of trial, it was testified that the stakes had long since disappeared, and the tenants of the tract across which the strip extended had farmed it along with the balance of the tract. The railroad company had never used the strip for right of way purposes, but it had paid taxes on it from the time of the conveyance. Subsequently the tract was divided between the heirs of Mrs. Hess, and John Welker became the owner of the forty-acre tract across which the 3.34-acre strip previously conveyed to the railroad extended. The partition was made by the parties with the understanding that John would get only 36.66 acres out of the quarter. In addition, he owned several other tracts of land, all of which were included in a lease executed by him and his wife in August, 1936, to one Von Almen, who assigned it to appellant, the Carter Oil Company, granting the right to drill for the oil and gas on the premises. The lease described the premises as follows:

S½ of SE¼ of Sec. 7 containing 80 acres

NE¼ of NE¼ of Sec. 18 containing 40 acres

NE¼ of NW¼ Sec. 18 containing 36 66/100 acres

W. part of N½ of NW¼ and SE¼ of NW¼ of Sec. 8 containing 56 acres, of Section 7-18-8 Township 7 N Range 3E containing 213 acres, more or less, it being the purpose and intent of the lessor herein to lease all of the lands, however described, owned by the said lessor in the section or sections specified.

Appellees Luttrell, Holleman, and Hinkle began the drilling operations, now sought to be enjoined, in September, 1938. They held a lease covering the west half of the 3.34-acre strip from one Metzger who obtained title to it from one Hausmann to whom the railroad had conveyed it. Metzger also held quitclaim deeds to the 3.34-acre strip from all the heirs at law of Mrs.

Hess. When appellees started drilling their well, the Carter Oil Company was also drilling an oil well 660 feet from its location, and the court found that if the well drilled by Luttrell, Holleman, and Hinkle were brought in, it would drain oil from under the adjoining land, which oil was owned by the Carter Oil Company.

The court concluded as a matter of law that the deed of 1912 from Mrs. Hess to the railroad conveyed the fee simple interest in the real estate involved, which interest was not limited by the definition in the deed of its purpose, "as and for its right of way." It therefore held that the equities were with the defendants and dismissed the bill of complaint for want of equity. It also concluded, however, that the oil and gas lease executed by the Welkers to appellant's assignor would have conveyed the entire interest in the strip had they been the owners of it, hence appellees would not be entitled to the affirmative relief prayed in their answer and counterclaim.

Whether the particular form of deed here involved results in the creation of a fee simple interest in the grantee or only an easement has never been determined by the Illinois courts so far as we can find. The question has been presented to courts of other jurisdictions and they have divided on their decision of it. See cases cited, pro and con, in a footnote to Magnolia Petroleum Co. v. Thompson, 8 Cir., 106 F. 2d 217, at page 227. See also annotations in 84 A.L.R. 271; 94 A.L.R. 523; 66 L.R. A. 36; L.R.A.1918B, 695. The difficulty of the question is well illustrated by the fact that opposite conclusions were reached by the District Court in the case at bar (see Carter Oil Co. v. Welker, 24 F.Supp. 753) and the Court of Appeals for the Eighth Circuit in the Magnolia case, supra, both after very scholarly study of the issues and the authorities upon precisely the same type of deed and both arising under the Illinois law. Since the opinions in both of those cases contain excellent analyses of the significant cases bearing on the subject as well as the applicable Illinois statutes,[1] we deem it unnecessary to repeat that discussion here, and therefore refer to only a few of the cases.

While the Illinois courts have not passed on the identical question involved, there are several cases to the effect that the recitation of the purpose of the conveyance

---

[1] Illinois Revised Statutes, 1937, chap. 30, section 12; chap. 114, section 20(3).

does not limit the title conveyed. See Supervisors of Warren County v. Patterson, 56 Ill. 111; Tinker v. Forbes, 136 Ill. 221, 26 N.E. 503; Downen v. Rayburn, 214 Ill. 342, 73 N.E. 364, 3 Ann.Cas. 36, all relied upon by the District Court. In these cases we find the conveyance of a lot or tract, "for a courthouse and other county buildings," "also for the purpose of locating proper water wheel and races to draw water," "to be used as a church location," all of which conveyances were held to transfer the fee simple interest, notwithstanding the recitation of purpose. The Magnolia case holds that these cases are not authority for the construction of the deed here involved for the reason that in those cases the question was whether a fee simple was conveyed or only a determinable fee, and that in such cases the courts do not look with favor upon conditions subsequent, hence will not construe words indicating purpose or use as restrictions. The situation is different, it holds, when the question is whether a fee is conveyed or only an easement, in which case words "which, if used in a deed granting a fee, may be regarded as surplusage, if used in a deed granting an easement, may constitute the essential description of the thing intended to be conveyed." [106 F.2d 224.]

We do not agree with this distinction. To us, the significant question appears to be, whether *land* is conveyed by the deed, or merely a *user* of the land. Much of the confusion on this subject has arisen from failure to distinguish between deeds granting the land and deeds granting a right of way over the land. For example, 1 Thompson on Real Property 534, section 421, states: "Where the granting clause of a deed declares the purpose of the grant to be a right of way for a railroad, the deed passes an easement only, and not a fee, though it be in the usual form of a full warranty deed." The Magnolia case quotes this as stating the generally accepted rule, apparently accepting it as authority for the construction of deeds similar to the one here involved. However, the three cases cited by Thompson as supporting his statement involve deeds which are quite unlike the one involved in the case at bar and in the Magnolia case. In Jones v. Van Bochove, 103 Mich. 98, 61 N.W. 342, 343, the deed conveyed "the right of way for a railroad * * and described as follows: 'A strip of land * * *.'" In Blakely v. Chicago, K. & N. R. Co., 46 Neb. 272, 64 N.W. 972, the significant words were: "Do hereby grant, bargain, sell, and convey unto the [R. R. Co.] its successors and assigns, for right of way *and for operating its railroad only.*" (Our italics.) Biles v. Tacoma, O. & G. H. R. Co., 5 Wash. 509, 32 P. 211, involved a conveyance by the Northern Pacific Railroad of a forty-acre tract which it then owned, to one Biles, by warranty deed, "reserving and excepting therefrom, however, a strip of land extending through the same * * * two hundred feet on each side of the * * * (railroad) to be used for a right of way or other railroad purposes * * *." Later another railroad laid tracks across the strip and the grantee sought to oust it, claiming title to the land. The court discussed the technical distinction between the words "reserve and except" and decided that since both were used, it became necessary to look at all the surrounding circumstances to determine that an easement was intended to be reserved rather than the fee in the strip excepted. Since none of the cases cited to the text involves a deed conveying a strip of land as and for a right of way, we do not consider the statement of the rule applicable here.

A similar failure to analyze the deed involved is found in 16 Am.Jur. on Deeds, section 245, which states the rule: "If, in a deed to a railroad, the land conveyed is described as a right of way, the deed may be construed as giving an easement right only, and not the full fee, notwithstanding there are other words in the deed referring to the fee simple, for such a conveyance does not imply a grant of the easement forever." The case cited as authority for this rule is East Alabama R. Co. v. Doe, 114 U. S. 340, 5 S.Ct. 869, 870, 29 L.Ed. 136. We find, however, that in that case, there was no land conveyed, but the deed recited: "* * * doth give, grant, bargain, and sell unto the said railroad company * * * the right of way over which to pass at all times * * * and to this end the limit of said right of way shall extend * *." Clearly this was intended to convey only a *right* and not *land,* and the rule as stated above only confuses the issue.

We conclude that, in the absence of a contrary decision by the Illinois courts, we prefer to follow the rule that a deed conveying a strip of land, even though the purpose be recited, is to be construed as conveying a fee simple interest in the grantee rather than an easement of use.

302

We do not agree with appellant's contention that the words "over and across" written in longhand in the deed limited the conveyance to an easement. We think the words "over and across" refer only to the surveyed line by which the exact location of the land was to be determined.

Appellant also contends that, even though the deed might be construed as intended to pass the fee interest, it was void for indefiniteness of description. We do not agree with this contention. While the deed did not specify the exact location of the strip by metes and bounds, it referred to a survey previously had by which the exact location could be ascertained, and this was sufficient to render the deed effective, particularly in view of the fact that stakes were driven along the line at the time. See 4 Thompson on Real Property (1924), §§ 3074, 3095.

Decree affirmed.